IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK J. WALKOWIAK,

                        OPINION and ORDER

          Plaintiff,

                        08-cv-368-slc

      v.

DR. HEINZL, DR. REYNOLDS,
DR. BRAINARD, DR. FRODIN,
BEENZO, nurse at New Lisbon
Correctional Institute, BOB
GILMATO, GANDOLIN, nurse
at New Lisbon Correctional
Institute, PRELL, nurse at New
Lisbon Correctional Institute,
KATHY PRELL, CANDACE
WARNER, JO ANN COOK,
JOE THYNE, ANA
BOATWRIGHT, MR. PLEUSS,
MR. BELLILE, and NURSES DOES,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

As I explained in a previous order in this case, dkt. #6, this case was assigned automatically to Magistrate Judge Stephen Crocker. However, because consents to the magistrate judge's jurisdiction have not yet been filed by all the parties to this action, I have assumed jurisdiction over the case temporarily.

On August 20, 2008, I dismissed petitioner's complaint on the ground that it violated Fed. R. Civ. P. 8. Now, petitioner Mark S. Walkowiak has filed an amended complaint

describing more clearly what his claims are and what respondents allegedly did to violate his constitutional rights.  Because petitioner is a prisoner, the 1996 Prison Litigation Reform Act requires the court to screen the complaint and deny petitioner's request for leave to proceed if his complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a respondent is immune from such relief. 28 U.S.C. § 1915(e)(2).  Jurisdiction is present. 28 U.S.C. § 1331.

Because petitioner's complaint raises claims that may not be asserted in a single lawsuit under Fed. R. Civ. P. 20, the claims must be severed.  Petitioner shall have until October 7, 2008 in which to advise the court which of the proposed lawsuits he wishes to pursue.

As an initial matter, I note that in his amended complaint, petitioner attempts to "update" the allegations made in his original complaint by providing new details and raising new claims related to incidents that occurred after the original complaint was filed.  Under Fed. R. Civ. P. 15(d), a court may, "on just terms," permit a party to serve a supplemental pleading alleging facts related to incidents that occurred after the date of the original pleading.  However, now is not the time.  As I explain below, petitioner's complaint must be severed into multiple lawsuits, and at this stage, it is not clear which of these lawsuits petitioner will pursue.  Therefore, petitioner's request to supplement the complaint is premature and any facts related to incidents that occurred after the date of the original pleading will be disregarded.  If, after deciding which lawsuits he wishes to pursue, petitioner

2

believes it is necessary to file a proposed supplement, he may seek permission from the court to do so.  However, I will caution petitioner that because he is subject to the 1996 Prison Litigation Reform Act, he will not be permitted to supplement his complaint with any claim that is not directed related to the claim on which he has been allowed to proceed or any related claim that he did not grieve to the highest level through the inmate grievance system.

In his complaint petitioner alleges the following facts.

ALLEGATIONS OF FACT

A.  <u>Parties</u>

Petitioner Mark J. Walkowiak is a prisoner at the New Lisbon Correctional Institution.  Respondents have different roles in the New Lisbon Correctional Institution: respondent Dr. Heinzl is a medical doctor; respondent Dr. Reynolds is a psychiatrist; respondents Dr. Brainard and Dr. Frodin are psychologists; respondent Beenzo is a registered nurse; respondents Bob Gilmato, Gandilin, Prell, Kathy Prell, and John and Jane Does are nurses; respondent Candace Warner is a Health Services Unit Administrator; respondent Jo Ann Cook is a social worker; respondents Joe Thyne and Mr. Bellile are unit managers; respondent Ana Boatwright is the warden; and respondent Pleuss is the maintenance director.

B.  <u>Sexual Assault</u>

3

During two routine "pat" searches that occurred before March 31, 2007, an Amanda Bender made sexual contact with petitioner. Petitioner reported the matter to the Juneau County Sheriff's Department. No charges were filed. The prison did not automatically offer petitioner psychiatric counseling. A Captain Yeager or Captain Doe interrogated petitioner twice. Petitioner felt intimidated and harassed by the captain, who suggested that female officers were entitled to put their hands on his genitals during a search and "would sue" if they weren't allowed to.

## C.  Suicide Attempt

On approximately April 18, 2007, petitioner saw respondent Reynolds and complained about his inability to sleep and other psychological problems, including his family history of manic-depressive disorder. Respondent Reynolds was unsure how to treat petitioner. Instead, he asked petitioner which of two "diametrically opposed" medications he would like to take. Petitioner felt like he had to "diagnose" himself.

Ultimately, respondent Reynolds prescribed citalopram, which petitioner began taking on April 20, 2007. Soon after, he felt suicidal and experienced other serious side effects such as depression, homicidal thoughts, extreme irritability, anxiety and irrational thinking. On May 10, 2007, respondent nurse Doe encouraged petitioner to continue to take the citalopram even though petitioner told her he was suicidal. On May 16, 2007, petitioner

4

quit taking the citalopram.  The symptoms petitioner experienced did not fade until spring 2008.

On July 15, 2007, petitioner attempted to commit suicide by ingesting hundreds of over-the-counter tablets available through the canteen and several 400 mg ibuprofen tablets he had been prescribed by respondent Heinzl.  Petitioner was not offered medical treatment by third shift officers present on his unit, including officer Swenson and certain John and Jane Doe officers.  Petitioner experienced residual side effects of his suicide attempt for a few weeks, including dizziness, nausea and "diabetic warning symptoms" such as fatigue after eating sweets.

On July 16, 2007, petitioner was seen by respondent Brainard in segregation observation.  Petitioner told him of his suicide attempt.  Respondents Brainard and Heinzl told petitioner that he would be returned to his unit as soon as he signed the necessary paperwork.  Instead, petitioner was transferred to another segregation cell and on July 18, an officer Weigel gave him a major conduct report for "misuse of a prescription medication." After a hearing on July 26, 2007, petitioner was found guilty of misusing the prescription medication and sentenced to six days segregation adjustment time.  Counting the time he spent before his sentence, petitioner spent a total of 16 days in segregation.

After his suicide attempt, petitioner wrote two to four times to schedule an appointment with a unit psychologist.  In August 2007, he met with respondent Brainard, who told him that his requests were never received and that at the time he wrote for the

appointment, the institution was understaffed and there was no psychologist assigned to his unit.

### D.  Officer Weigel

When officer Wiegel gave petitioner the conduct report for misuse of a prescription medication, he explained petitioner's rights to him and forced petitioner to sign the complaint immediately to affirm that he had read and understood the complaint.  Petitioner was not given time to read the complaint before he was forced to sign it.  In addition, officer Wiegel turned on bright overhead lights in petitioner's cell, exacerbating the warm conditions of the cell.  The overhead lights were left on for several hours.

After the hearing on petitioner's conduct report, officer Wiegel removed petitioner's personal Bible from the segregation cell.  It was not returned to petitioner despite his repeated requests for it.

### E.  Items Taken from Housing Unit

While petitioner was in segregation, respondent Tydrich and officer Doe took several items from petitioner's housing unit, including medical supplies and assorted hygiene and office supplies.  The items were thrown away, but their disposition was never documented and petitioner was not compensated for his loss.  His $200 guitar was missing for two weeks before it was returned to him.

6

F.  <u>Back Pain</u>

Shortly after petitioner's arrival at the New Lisbon Correctional Institution in November 7, 2006, he began to experience pain in various parts of his body.  Petitioner met with respondents Doe and Heinzl and told them that he had had major back, knee and elbow injuries.  He asked for an extra mattress because his pain prevented him from sleeping and his body would go numb after lying down for a short time.

Petitioner complained of pain and other symptoms to the Health Services Unit on many occasions, including February 28, 2007; during the last week of March and the first week of April 2007; the July 28 and 31, 2007; August 26, 2007; September 1 and 5, 2007; November  3, 25 and 27, 2007; January 16, 2008; April 8, 2008; May 6, 16 and 19, 2008; June 4 and 19, 2008.  In response to his various requests, respondents nurse Doe, Heinzl, Beenzo and Warner refused to give petitioner an extra mattress or other care that he requested.

G.  <u>Sore on Gums</u>

Around early November, petitioner had a dental appointment.  He had a sore on his gums.  Dentist Doe and respondent Heinzl were not sure what it was.

7

### H.  Unsealed Mail Containing Sensitive Medical Information

On May 16, 2008, petitioner wrote to psychological services, stating that he was "suicidally depressed continuously" for most of 2007 and 2008.  Petitioner saw respondent Brainard on May 27, 2008.  Afterwards, respondent Brainard sent a letter to petitioner stating what petitioner had written in his letter and detailing other sensitive medical information related to petitioner. The letter was sent approximately May 23, 2008 in an unsealed envelope.

### I.  Brown Water

In October 2007, while petitioner was working in the main kitchen, the water came out of the faucet brown and looking like "beef stew."  Petitioner complained about the water on several occasions to respondents Pleuss and Boatwright and filed related inmate complaints.  Respondent Boatwright stated that the water was safe because maintenance regularly monitors the water; respondent Pleuss, the maintenance supervisor, said that maintenance does not monitor the water.

### J.  No Substitute for Milk

Shortly after petitioner arrived at the New Lisbon Correctional Institution, he told respondents Heinzl and nurse Doe that he could not tolerate drinking the Waupun Dairy

milk.  The milk makes petitioner nauseus to the point of vomiting.  Petitioner has asked repeatedly for a substitute for milk and filed complaints, but all requests have been denied and all complaints dismissed.  The lack of a substitute has caused petitioner a nutritional deficiency.

OPINION

Petitioner's complaint raises a laundry list of concerns and troubles that petitioner has faced as a prisoner at the New Lisbon Correctional Institution.  The Court of Appeals for the Seventh Circuit recently made it clear that such complaints are unacceptable; district courts have an independent duty to apply the permissive joinder rule stated in Fed. R. Civ. P. 20 to prevent improperly joined parties from proceeding in a single case.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007)(complaint raising unrelated issues against different defendants "should be rejected" by district court in accordance with Fed. R. Civ. P. 20); <u>see also</u> Fed. R. Civ. P. 21 (court may, at any time, <u>sua</u> <u>sponte</u> add or drop a party or sever claim against party).

Rule 20 prohibits a petitioner from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit.  Multiple defendants may not be joined in a single action unless the petitioner asserts at least one claim to relief against *each* respondent that arises out of the same transaction or occurrence or series of transactions or

9

occurrences and presents questions of law or fact common to all.  <u>George</u>, 507 F.3d at 607;

3A <u>Moore's Federal Practice</u> § 20.06, at 2036-2045 (2d ed. 1978).

Only after the requirements for joinder of parties have been satisfied under Rule 20

may a petitioner use Fed. R. Civ. P. 18 to join any unrelated claims against the multiple

defendants or any combination of them.  <u>Intercon Research Assn., Ltd. v. Dresser Ind., Inc.</u>,

696 F.2d 53, 57 (7th Cir. 1983) (quoting 7 Charles Alan Wright et al., <u>Federal Practice &</u>

<u>Procedure</u>).   In other words, only once the core set of allowable defendants has been

determined under Rule 20 may a petitioner join additional unrelated claims against one or

more of those defendants under Rule 18.

In this case, I am persuaded that the pleading must be divided into several separate

lawsuits in order to bring it into compliance with Rule 20.  The precise number of lawsuits

is impossible to determine, because the sheer number of Doe respondents named in the

complaint hampers the court's ability to know whether a Doe identified with respect to one

claim is the same Doe named with respect to another claim.  In addition, it is not clear

whether petitioner actually intended to raise certain claims.  For example, it is not clear

whether he wants to sue Amanda Bender and Captain Yeager for matters relating to his

alleged sexual assault, or officer Weigel for taking his Bible and forcing him to sign a conduct

report without allowing him to read it because he did not name these individuals in the

caption of his lawsuit even though he clearly knows their names.  If he does wish to sue

10

them, then his claims against them would have to be raised in lawsuits separate from those I will identify below. From what other claims I have been able to identify in the complaint, however, I conclude that they must be divided as follows.

In what I will call Lawsuit #1, petitioner may raise his claims that (a) respondents Reynolds and nurse Doe failed to protect him from a suicide attempt; and (b) respondent Brainard failed to respond to requests for treatment after the attempt. (If petitioner intends to sue other prison officials who failed to treat him after this suicide attempt, he would have to amend his complain to name them or a high official who can identify them from the description petitioner provides.)

In what I will call Lawsuit #2, petitioner may sue respondent Tydrich and a person not yet named for taking items from petitioner's housing unit without documenting their disposition or compensating petitioner for his loss.

In what I will call Lawsuit #3, petitioner may sue respondents nurse Doe, Heinzl, Beenzo and Warner for refusing to give petitioner an extra mattress or other health care he requested on numerous occasions.

In what I will call Lawsuit #4, petitioner may sue respondent Heinzl and a person not yet named in his complaint for failing to treat a sore that petitioner had on his gums when he went to a dental appointment.

11

In what I will call Lawsuit #5, petitioner may assert his claim that respondent Brainard failed to keep petitioner's medical information private by describing it in an unsealed letter he sent to petitioner.

In what I will call Lawsuit #6, petitioner may raise his claim that respondents Pleuss and Boatwright failed to keep the water sanitary.

In what I will call Lawsuit #7, petitioner may raise his claim that respondents nurse Doe and Heinzl failed to provide for his health care needs by refusing to provide a food substitute for milk.

In light of George, I may apply the filing fee petitioner paid in this case to only one of the lawsuits I have identified above. Petitioner will have to choose which lawsuit that is. That lawsuit will be the only lawsuit assigned to this case number.

As for the other lawsuits, petitioner has a more difficult choice. He may choose to pursue each lawsuit separately. In that case, he will be required to pay a separate filing fee starting with an initial partial payment for each case he pursues. Alternatively, petitioner may choose to dismiss any or all of his remaining lawsuits voluntarily. If he chooses this latter route, petitioner will not owe additional filing fees. Any lawsuit dismissed voluntarily would be dismissed without prejudice, so petitioner would be able to bring it at another time.

Petitioner should be aware that because it is not clear at this time which of his separate lawsuits he will pursue, I have not undertaken a full screening of the merits of the claims raised in any of the lawsuits identified above.  Once petitioner identifies the suits he wants to continue to litigate and pays any additional filing fees, I will screen the individual actions that remain as required under 28 U.S.C. § 1915(e)(2).  Because petitioner will earn a strike for any suit that may be dismissed for one of the reasons set out in 28 U.S.C. § 1915(g), petitioner should consider carefully the merits and relative importance of each of his potential lawsuits when choosing which of them he wishes to pursue.

ORDER

IT IS ORDERED that

1.  Petitioner may have until October 7, 2008, in which to identify for the court the separately numbered lawsuit identified in the body of this opinion on which he wishes to proceed under the number assigned to this case.  As to this one lawsuit, petitioner's initial partial payment will be applied.

2.  Petitioner may have until October 7, 2008, in which to advise the court which of the remaining separately numbered lawsuits he will prosecute, if any, and which he will withdraw voluntarily.

3.  For any lawsuit that petitioner dismisses voluntarily, he will not owe a filing fee.

13

4.  For each lawsuit that petitioner advises the court he intends to prosecute, (other than the one petitioner chooses to keep assigned to this case number) he will owe a separate $350 filing fee, and will be assessed an initial partial payment of $6.27, which he must pay no later than October 21, 2008.  The payment(s) may be submitted by a check or money order made payable to the clerk of court.

5.  If, by October 7, 2008, petitioner fails to respond to this order, I will enter an order dismissing the lawsuit as it presently exists without prejudice for petitioner's failure to prosecute.

Entered this 25th day of September, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

14